107 N.J. Super. 209 (1969)
257 A.2d 743
C.J. SIMONS & CO., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 3, 1969.
*210 Mr. Frederick J. Wortmann appeared for plaintiff (Messrs. Braff, Litvak & Ertag, attorneys).
Mr. Carl F. Barbato attorney for defendant.
YANCEY, J.C.C. (temporarily assigned).
This is a motion for summary judgment made pursuant to R. 4:46-1 by defendant, American Mutual Liability Insurance Company (American Mutual), duly licensed to do business in New Jersey. Plaintiff C.J. Simons & Co. filed a cross-motion for summary judgment on its behalf.
*211 The facts underlying these proceedings are uncontroverted. Defendant issued two policies to Hersh Enterprises, Inc., one a workmen's compensation policy and the other a general liability policy. Both policies were to remain in force from August 24, 1964 to August 24, 1965. On January 5, 1965 Hersh Enterprises assigned its policies to plaintiff. Defendant acknowledged this assignment in writing. Prior to the expiration of the policies defendant declared a dividend on each policy consisting of $1,995.41 on the workmen's compensation policy and $1,139.66 on the general policy. The insured, Hersh Enterprises, defaulted in its payment of the insurance premiums, leaving a balance still due to defendant of $4,000.09. Thereafter, Hersh Enterprises became bankrupt. In the bankruptcy proceedings which followed defendant filed a statement of account with the judge in bankruptcy on March 18, 1966 which indicated that it had credited the dividends to the account of Hersh Enterprises instead of paying the amount to the insured's assignee, C.J. Simons & Co. The result of this credit was that an unpaid balance of $865.02 was still due to defendant.
Plaintiff's position is that they are the insured's assignee and that once the dividends were declared they became payable to it, and that defendant wrongfully credited the insured's account with these dividends. Defendant contends that nothing was owed either the insured or his assignee due to the default of the insured in its payment of the premiums.
A "dividend" represents a share of surplus apportioned by the directors of mutual insurance companies for distribution to policyholders, and it is commonly considered a reduction of premium. Sniader v. Sniader, 40 Ill. App. 384, 188 N.E.2d 255 (App. Ct. 1963). The dividend acts as a return to mutual insurance policyholders (all of whom are "owners" of the company) of a portion of earned premiums not expended in the operations of the company. In re Marcalaus Mfg. Co. 3 Cir. 205 F.2d 627 (1953). *212 It appears to be common practice amongst insurers to have any dividends or premium refunds credited against any of the insured's obligations to the insurer. "It is not inconsistent to refuse actual payment of a refund to an insured in default while permitting a credit to be given him `to the extent of his obligations to the Company.'" Ibid., at 629.
In the present case the American Mutual liability insurance policy, provision 18, stated:
This policy is non-assessable. The insured is a member of the Company and shall participate to the extent and upon the conditions fixed and determined by the Board of Directors, in accordance with the provisions of the law, in the distribution of dividends so fixed and determined
On May 19, 1965 defendant's board of directors at a regular meeting adopted a resolution concerning the payment of dividends to policyholders whose policies were to terminate in the month of August 1965. The pertinent portion of that resolution states: "Provided no dividends shall be paid or credited to a policyholder or principal until the terms of the policy or bond as respects payment of premium shall have been complied with." Due to the fact that the insured, Hersh Enterprises, Inc., defaulted in payment of its premiums, it was not entitled to be paid any dividend according to the terms of the insurance policy and the resolution passed by the board of directors.
In the Marcalaus case the mutual insurer's board of directors passed a resolution similar to the one in the present case, stating that a premium refund should not be "payable" to any insured in default in his payment of any premium due the insurer. The court held that although this meant that a refund was not payable to the insured, such a default would not necessarily deprive the insured of the right to have the amount of the refund credited against his obligation to the insurer. The procedure outlined in Marcalaus was adhered to in the present action; defendant credited the declared dividends against the insured's outstanding *213 obligations to it, instead of paying the insured a cash dividend.
The intention of the board of directors was not to make a payment of a refund on a policy until all the premiums were paid, because a default in a payment would result in added collection costs for the company, especially where litigation has to be resorted to in order to effect the collection of the premium. Policyholders who have complied with the terms of the policy should not be made to bear the extra expense of collection costs caused by defaulting policyholders. Therefore, payments of refunds are withheld until the policies are fully complied with.
Although there is a paucity of New Jersey cases on this matter, a recent United States Court of Appeals decision held that an insurer under the terms of its insurance policies could use its discretion in determining and apportioning divisible surplus. Triscaro v. Union Labor Life Insurance Co., 355 F.2d 1 (6 Cir. 1966). The facts in Triscaro were that the insurer offset a prior year's deficit on a policy against a current divisible surplus, although there was no specific authority in the dividend provision of the group policy to do this. The court held that the dividend provision specifically reserved to the insurer the right to ascertain and apportion the divisible surplus as to each policyholder, and, therefore, the insurer had the right to exercise its discretion in the adoption of a formula providing for offsetting of a deficit.
In the case at bar the assignee was put on notice by the terms of the insurance policy (condition 18) that the board of directors in its discretion would fix the terms and conditions for the payment of dividends. The action taken by defendant in crediting the dividends against the outstanding obligations of the insured was therefore authorized by the terms of the insurance policy as long as the insurer acted in good faith. There are no allegations by plaintiff that defendant acted in bad faith. The insured, Hersh Enterprises, Inc., did not comply with the terms of the policies *214 in that it defaulted in its payment of premiums. An assignee has no right greater than his assignor, the result being that plaintiff is not entitled to the payment of dividends.
Defendant's motion for summary judgment is hereby granted and plaintiff's cross-motion for summary judgment denied.